UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TRAVIS DWANYE WARE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-2250** |
| **ROBERT C. TANNER, CASEY MCVEA, MICHAEL HARRELL, JOSH GOFF, DONNA TOUCHSTONE** | **SECTION "F" (4)** |

**PARTIAL REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. On October 12, 2012, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff participating by conference telephone call.[2] Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

**I.     Factual Background**

    **A.     The Complaint**

The plaintiff, Travis Dwanye Ware ("Ware"), filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, Warden Robert C. Tanner, Dr. Casey

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges occurred and the legal basis for the claims. The information received is considered to an amendment to the complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. No. 8. The plaintiff was sworn prior to testifying. The hearing was digitally recorded.

McVea, Major Michael Harrell, Nurse Josh Goff, and Master Sergeant Donna Touchstone, all members of the staff of the B.B. "Sixty" Rayburn Correctional Center ("RCC").

Under a broad reading,[3] Ware alleged that Dr. McVea sexually assaulted him during a medical examination at RCC on June 8, 2012. He claimed that he sued Warden Tanner as the head custodian at RCC and because he hired Dr. McVea, who is a convicted sex offender.

He stated that he sued Major Harrell for failing to inform him that Dr. McVea was a sex offender based on charges of child pornography. He also alleged that Harrell prepared a false investigative report to hide the assault. He also claimed that Harrell retaliated against him for reporting the assault.

He claimed that he named Goff, a nurse at RCC, as a defendant because he gave a false statement during the investigation that he was present in the room during the examination by Dr. McVea during which Ware claims that the assault occurred. Ware alleged that Goff left the room, as should be shown on the security cameras. He similarly named Sergeant Master Touchstone for her alleged false statement during the investigation to attempt to cover-up the assault.

As relief, Ware seeks a transfer to another facility and to have each defendant charged for the cover-up of the assault and fired from their positions. He also seeks to be awarded $50,000.00 in damages from each defendant.

B.     The *Spears* Hearing

Ware testified he is a convicted inmate serving a 25 year prison sentence for armed robbery. He stated that he was 17 years old when he was convicted and by December 2012, he would have served ten years of that sentence.

---

[3]*Pro se* civil rights complaints are broadly construed. *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).

Ware stated that he has been housed in RCC since March of 2009.  Prior to that, he was in the Allen Correctional Center ("ACC").  He was placed in disciplinary confinement at both facilities for having sexual relations with a visitor at ACC.  The disciplinary confinement was transferred with him to RCC.

Ware testified that he had been treated for pain in his "private area" which he claimed was caused by exercise.  He was seen by Dr. Larevia at RCC who is no longer at that facility.  He was switched to the care of Dr. McVea when he went for an examination on June 8, 2012.  He recalled that Dr. McVea asked to see where the pain was.  Ware testified that, when he showed Dr. McVea, the doctor grabbed Ware's penis and pulled on it "like he was masterbating me."

Ware claimed that he slapped McVea's hand away and told him "why you tripping?"  At that time Goff walked back into the room and Dr. McVea acted like he was giving Ware a normal examination.  Dr. McVea told Ware there was nothing wrong, and he did not prescribe any medicine or other care.

Ware stated that he walked out of the room and sat in the waiting room.  While checking another inmate nearby, Goff asked Ware why he was still there.  Ware said he told Goff that nothing was wrong and that Goff would not believe him anyway.  Ware indicated that he sued Goff because he later told the investigating officer that he was in the room during the whole examination and saw nothing happen.

Ware also sued Master Sergeant Touchstone because she lied about what Ware told her during her taking of his complaint.  Ware claims that she told Captain Harrell, the investigator, that Ware reported only that Dr. McVea touched his penis; she did not tell him about the stroking.  Captain Harrell also questioned Ware and eventually took a videotaped statement from him.

Ware also filed an administrative grievance complaint. He testified that he eventually received a response to his complaint which relied on Goff's statement that he was in the room and saw nothing.

Ware stated that he requested protective custody because there are so many employees at RCC that are related to each other, although he had no reason to believe that McVea was related to anyone else at the prison. He stated that he received a rule violation charge for making that request. He sought review of that charge to no avail.

Ware indicated that he sued Warden Tanner because he is the head of the jail. Ware had no reason to believe that Tanner had any knowledge of the incident or his complaints. He also stated that other members of the prison staff told him that Dr. McVea's criminal sex offense was based on child pornography.

Ware also testified that he continues to suffer with the same pain in his genitals, and he is always told that he has to have blood work done. Ware stated, however, that he refuses to be treated at the jail by Dr. McVea, and he has not been allowed to be treated by an outside physician. He stated that his requests for outside treatment have been repeatedly denied. He claims that the medical director, Betsy Carter, told him that the prison doctor, Dr. McVea, has to approve the outside referral. Ware believes that Dr. McVea is refusing to allow it because of his complaints against him. Ware stated that his family tried to call Secretary James LeBlanc at the Louisiana Department of Corrections, to have him seen by another doctor to no avail.

## II.     Standard of Review for Frivolousness

Titles 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they

are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

### III.   Analysis

#### A.   Claims against Warden Tanner as a Supervisor

Ware testified that he sued Warden Tanner as a supervisory officer over RCC. A supervisory official, like Warden Tanner, cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate at the prison allegedly violated the plaintiff's constitutional rights. *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). Warden Tanner may only be liable

under § 1983 if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998) (citing *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976)); *see also Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120 (5th Cir. 1980). This personal involvement also must include a showing of deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

Ware does not allege that Warden Tanner was present for, or personally involved in, his medical care or that he suffered any injury as a result of any directive by the Sheriff which could create vicarious liability. *See Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991); *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988); *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996). Instead, Ware concedes that Warden Tanner had no knowledge of the incidents of which he complains. Ware named Warden Tanner simply because he is the head of the jail. That is not a sufficient basis to state a claim against Warden Tanner under § 1983.

Thus, Ware's § 1983 claims against Warden Tanner are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e) and § 1915A and 42 U.S.C. § 1997e.

  **B.**  **Claims of Concealment, False Statements, Inadequate Investigation against Goff, Touchstone and Harrell**

Ware alleges that the defendants Goff and Touchstone covered-up the assault and lied during Major Harrell's investigation of his complaints against Dr. McVea and that Harrell failed to thoroughly complete the investigation and instead relied on the false statements. As indicated, Ware claims that Goff lied when he said that he was in the room during the entire examination and nothing

inappropriate happened. He also claims that Touchstone misrepresented his complaints against the doctor when she told Harrell that Ware said that Dr. McVea only touched his penis and she did not mention the pulling of his penis.

With respect to his claim that Goff and Touchstone misrepresented the facts during the investigation, his claims are also frivolous. To obtain relief under the § 1983, a person must establish that a state actor deprived him of a right secured by the Constitution or laws of the United States. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978). In this case, even if the defendants reported the events falsely to cover up Dr. McVea's alleged wrongdoings, Ware has not shown that this is a violation of a right secured by the Constitution or laws of the United States. *See Knox v. Wainscott*, No. 03-C-1429, 2003 WL 21148973, at *9 (N.D. Ill. May 14, 2003) ("However, the plaintiff has no separate cause of action against the defendant Lang for falsifying an injury report. Lang may have engaged in professional misconduct if she fabricated documents to cover up wrongdoing committed by her fellow officers. Nevertheless, her actions did not violate any constitutional right.").

If any wrongdoings were "covered up," this could be a violation of prison regulations or even state law, but there is no showing that it is a violation of any right protected by the Constitution or laws of the United States. *Cf. Baker v. McCollan*, 443 U.S. 137, 146 (1979) (noting that many claims which may be actionable as violations of state tort law do not amount to constitutional violations); *see also*, *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). Thus, even if Ware contends that the defendants acted in concert to hide any alleged wrongdoings, "[i]t remains necessary to prove an actual deprivation of a constitutional right; a conspiracy to deprive is insufficient." *Gillum v. City of Kerrville*, 3 F.3d

117, 123 (5th Cir. 1993) (quoting *Villanueva v. McInnis*, 723 F.2d 414, 418 (5th Cir. 1984)). He has not alleged one here by these defendants.

Furthermore, an inmate has no constitutional right to have incidents at the prison investigated or resolved in the manner that he desires. *See Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (no right for prisoners to have complaints resolved to their satisfaction); *accord*, *Morris v. Cross*, 476 F. App'x 783, 785 (5th Cir. 2012) (failure to conduct investigation does not implicate due process inmate has no protected interest in favorable resolution of his grievances); *Edmond v. Martin*, 100 F.3d 952, 1996 WL 625331, at *1 (5th Cir. Oct. 2, 1996) (Table, Text in Westlaw) (claim that a defendant failed to investigate and denied a prisoner's grievance raises no constitutional issue); *Thomas v. Lensing*, 31 F. App'x 153, 2001 WL 1747900, at *1 (5th Cir. Dec. 11, 2001) (same). As alleged, Ware's statements given to Touchstone and Harrell did result in an investigation conducted by Harrell which resulted in the denial of Ware's claims through the prison grievance process. The fact that Ware was given no relief is not a constitutional concern. This portion of Ware's claims does not invoke constitutional protection and is frivolous.

For these reasons, Ware's claims against these defendants are frivolous and otherwise fail to state a claim for which relief can be granted on this aspect of his claim under 28 U.S.C. § 1915(e) and § 1915A and 42 U.S.C. § 1997e.

### C.      Claims against Dr. McVea

Ware has alleged that Dr. McVea violated his constitutional rights by the inappropriate touching during the medical exam. He also alleges that Dr. McVea has retaliated against him for reporting the act by refusing to allow him to obtain medical care for his on-going genital pain from another outside physician.

### 1.     Cruel and Unusual Punishment under the Eighth Amendment

As described by Ware, Dr. McVea grabbed his penis and inappropriately stroked it during an examination for Ware's complaints of genital pain.  The Court finds that, while sexual misconduct by a prison doctor can be sufficient to invoke § 1983 liability as a violation of the Eighth Amendment, Ware has not alleged a serious level of behavior or an injury sufficient to entitle him to relief.

The Supreme Court has instructed that the Eighth Amendment protects against conditions of prison life that amount to cruel and unusual punishment.  *Porter v. Nussle*, 534 U.S. 516, 527-32 (2002).  "Prison conditions constitute cruel and unusual punishment if they involve the 'wanton and unnecessary infliction of pain [or if they are] grossly disproportionate to the severity of the crime warranting imprisonment.'"  *Hamilton v. Lyons*, 74 F.3d 99, 103-04 (5th Cir. 1996) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Hutto v. Finney*, 437 U.S. 678, 687 (1978)).  In order to hold a prison official, like Dr. McVea, liable as a state actor for violating the Eighth Amendment, the plaintiff must establish that he acted "'with a sufficiently culpable state of mind' and . . . the alleged wrongdoing was objectively 'harmful enough' to establish a Constitutional violation."  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991));  *see also*, *Farmer*, 511 U.S. at 825; *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998).

The federal courts have resolved that sexual assault by a prison official upon an inmate can constitute cruel and unusual punishment as an episodic violation of the Eighth Amendment when these factors are met.  *See Burns v. United States*, 265 F.3d 1059, 2001 WL 872784, at *1 (5th Cir. Jul. 6, 2001) (Table, Text in Westlaw) (rejecting argument that sexual assault claim by inmate was

not a prison condition); *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (sexual abuse of an inmate by a corrections officer serves no legitimate penological purpose and can result in severe physical and psychological harm, constituting an unnecessary and wanton infliction of pain forbidden by the Eighth Amendment); *Mocnik v. Frank*, No. 06-C-191, 2006 WL 1236779, at *4 (W.D. Wis. May 3, 2006) ("If respondent Williams took advantage of his position as a doctor to sexually abuse petitioner, then Williams's conduct would violate the Eighth Amendment. Petitioner has adduced sufficient facts to establish a claim that respondent Williams violated his constitutional rights by touching him without consent for a non-medical purpose."); *cf.*, *Copeland v. Nunan*, 250 F.3d 743, 2001 WL 274738, at *2 (5th Cir. 2001) (Table, Text in Westlaw) ("Though not recognized in the context of a condition of confinement claim, sexual assault against inmates by prison guards without lasting physical injury may be actionable under the Eighth Amendment as acts which are 'offensive to human dignity'").[4]

However, allegations of sexual or non-consensual touching by a prison official may not be "objectively, sufficiently serious" to show harm of federal constitutional proportions. *Boddie v. Schneider*, 105 F.3d 857, 861 (2d Cir. 1997). For example, in *Boddie*, a case often cited by the Fifth Circuit, a female guard was accused of, among other sexually inappropriate acts, touching the inmate's penis through his pants, making suggestive comments, and on another occasion, pressing her pelvis against his genitals in a sexually suggestive manner to pin him to the wall when he disobeyed her order. *Boddie,* 105 F.3d at 860. The Second Circuit found that sexual abuse and

---

[4]*See also*, *Thomas v. District of Columbia*, 887 F. Supp. 1, 4 (D.D.C. 1995) ("Unsolicited sexual touching, harassment, and coercion are 'simply not part of the penalty that criminal offenders pay for their offenses against society.'" (quoting *Farmer*, 511 U.S. at 834)); *Connors v. Northern State Prison*, 2009 WL 1562240, *3-4 (D.N.J. May 28, 2009) ("Sexual harassment of an inmate by a prison guard or official can rise to the level of an Eighth Amendment violation.") (citing *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) and *Boddie v. Schnieder*, 105 F.3d 857, 860-61 (2d Cir. 1997)).

suggestive touching by a prison official could <u>never</u> have a legitimate penological purposes and would amount to cruel and unusual punishment under certain more circumstances. *Id*. at 861. The Court resolved, however, that the isolated yet multiple episodes of touching alleged by Boddie were "despicable" but, although occurring on several occasions, did not involve the type of severe actions, like repeated acts of rape and lasting physical injury, necessary to meet constitutional proportions under *Farmer* and *Rhodes*. *Id*. at 861-62; *see also Allen v. Johnson*, 66 F. App'x 525, 2003 WL 21017401, at *1 (5th Cir. Apr. 15, 2003) (Table, Text in Westlaw) (claim of sexual abuse insufficient where male prison guard touched male inmate in a sexual manner during routine pat-down searches); *see also Brown v. Wilson*, No. 10-181, 2012 WL 6708443, at * 3 (N.D. Tex. Apr. 30, 2012) (male inmate's claims that male prison guard grabbed his buttocks and whispered sexual remarks was not severe enough to cause injury so as to invoke Eighth Amendment protection), *report adopted as modified on other grounds*, 2012 WL 6719464, at *4 (N.D. Tex. Dec. 17, 2012).

In the instant case, by these standards, Ware has alleged an isolated incident of touching and stroking by Dr. McVea, where there was no physical injury. He also has not alleged any repeated attempts at sexual abuse other than this one occasion, albeit because he refused to see Dr. McVea again. Nevertheless, Ware has not pointed to the type of serious, sexual activity or more than a *de minimis* offensive touching of his penis which would invoke constitutional protections under the Eighth Amendment. *Copeland*, 2001 WL 274738, at *2 (inmate's allegations that prison pharmacist fondled his penis through the food slot of his cell on three occasions and fondled his anus on another occasion was *de minimis* injury not compensable under the Eighth Amendment). While such an act by Dr. McVea, if true, would be "despicable," under the facts asserted, Ware "has not alleged sufficiently serious assaultive behavior or resulting injury to show a constitutional violation." *Pryer*

*v. Walker*, 385 F. App'x 417, 418 (5th Cir. 2010) (citing *Boddie*, 105 F.3d at 860-61) (inmate's claim that female guard sexually abused him when she rubbed his chest and commented on his hair during an EKG without injury were not sufficiently serious to show a constitutional violation); *see also Allen*, 2003 WL 21017401, at *1.

Furthermore, under the PLRA, a prisoner cannot obtain monetary relief solely for mental or emotional injury. "No [f]ederal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Since Ware does not allege any physical injury at all, he has not stated a claim that would entitle him to the monetary relief sought. His claims against Dr. McVea are frivolous and otherwise fail to state a claim for which relief can be granted under 28 U.S.C. § 1915 and § 1915A and 42 U.S.C. § 1997e.

### 2. Retaliation/Denial of Medical Care

Ware also alleges that, as a result of the incident in the examination room, he does not want to be treated by Dr. McVea for the pain in his genitals for fear that the sexual abuse will happen again. He claims that he has asked to be taken to another physician outside of the prison because McVea is the only physician at RCC. He alleges, however, that as a result of the lodging of the complaint of sexual assault, Dr. McVea has retaliated against him by refusing to approve the referral to allow him to seek outside medical care. Thus, Ware alleges both retaliation and denial of medical care by these actions.

To prove a retaliation claim under § 1983, a prisoner plaintiff must establish: (1) a specific constitutional right at issue; (2) the defendant's intent to retaliate against the prisoner for his exercise of that right; (3) a retaliatory adverse action; and (4) causation. *Jones v. Greninger*, 188 F.3d 322,

324 (5th Cir. 1999) (citing *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)). The Fifth Circuit has also cautioned that "[t]o assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, trial courts must carefully scrutinize these claims." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).

The inmate must prove more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). Instead, the inmate must show causation by proving that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods*, 60 F.3d at 1166. This is recognized as a "significant burden" that requires the inmate to "produce direct evidence of motivation or, the more probable scenario, . . . 'allege a chronology of events from which retaliation may plausibly be inferred.'" *Id*. (quoting *Randle v. Woods*, 299 Fed. App'x 466, 468 (5th Cir. 2008); *Shelton v. Lemons*, No. 11-20670, 2012 WL 3493982, at *2 (5th Cir. Aug. 15, 2012).

Under these standards, the inmate must point to a specific constitutional right that has been violated as a direct result of the retaliatory action. *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996); *Woods*, 60 F.3d at 1166. An adverse action under the third prong is an act "capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006). The Court stated that "this threshold is intended to weed out only inconsequential actions and is not a means to excuse more serious retaliatory acts by prison officials." *Id*. For this reason, "mere conclusory allegations of retaliation" or a prisoner's own beliefs are insufficient to establish retaliation. *Jones*, 188 F.3d at 325; *see also Randle v. Woods*, 299 F. App'x 466, 468 (5th Cir. Nov. 19, 2008). Instead, a prisoner must either "produce direct evidence of motivation" or "allege a chronology of events from which retaliation may plausibly be

13

inferred." *Jones*, 188 F.3d at 325.  Based on the foregoing, Ware has at least stated a claim of retaliation connected to the denial of medical care for purposes of the Court's review for frivolousness.

As an initial matter, it is well settled that prison officials may not retaliate against a prisoner for exercising his First Amendment right to complain through proper channels about a prison official's misconduct.  *Morris*, 449 F.3d at 684; *Woods*, 60 F.3d at 1164.  Here, Ware has alleged that he continues to suffer with pain in his genitals that has gone untreated as a result of Dr. McVea's inaction.  He claims that Dr. McVea, who sexually assaulted him, is the only physician at the prison.  He lodged a complaint with prison officials against Dr. McVea for the assault and unsuccessfully pursued the administrative grievance process on the incident.  He claims that he has asked to be treated by another doctor and has been told by other medical personnel and prison officials that only Dr. McVea can approve the referral to an outside doctor and he refuses to do so.  As a result, Ware has not received any medical care for his condition.  These allegations, if proven true, could establish an intentional retaliatory action by Dr. McVea in response to Ware's complaints against him.  The record at this stage contains nothing to refute the alleged motivation and subjective intent for Dr. McVea's refusal to allow the outside referral.

Ware alleges as a retaliatory result that this denies his right to medical care for a known condition.  Denial of medical care by a prison doctor can result in an Eighth Amendment violation for purposes of a § 1983 claim when that conduct amounts to deliberate indifference to the prisoner's serious medical needs, which constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.  *Stewart v. Murphy* 174 F.3d 530, 533 (5th Cir. 1999)

(*quoting Estelle*, 429 U.S. at 104); *Harris v. Hegmann*, 198 F.3d 153 (5th Cir. 1999). In *Estelle*, the United States Supreme Court concluded that:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle*, 429 U.S. at 97 (citation omitted, footnotes omitted). Thus, to state an Eighth Amendment claim, a plaintiff must allege a deprivation of medical care sufficiently serious to show that "the state has abdicated a constitutionally-required responsibility to attend to his medical needs," *Bienvenu v. Beauregard Parish Police Jury,* 705 F.2d 1457, 1460 (5th Cir. 1983), and that a prison official knew of and disregarded "an excessive risk to inmate health or safety," *Stewart*, 174 F.3d at 533 (*quoting Farmer*, 511 U.S. at 837).

Thus, under this "deliberate indifference" standard, a prison official is not liable for the denial of medical treatment "unless the official knows of and disregards an excessive risk to inmate health or safety." *Stewart*, 174 F.3d at 534 (citing *Farmer*, 511 U.S. at 837). While malpractice and negligent treatment do not rise to the level of a constitutional tort, *see Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993), a claim of "unnecessary and wanton infliction of pain repugnant to the conscience of mankind," can state a claim of a constitutional tort. *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997) (citing *Estelle,* 429 U.S. at 105-106).

The denial of medical care itself is at least demonstrated by Ware's allegations, if proven true, because Ware has not been examined or treated for his condition and pain since the June 2012 incident. The Court recognizes that it is more likely from Ware's allegations that he is refusing to

allow Dr. McVea to examine his genitals in light of the alleged inappropriate touching; which is an understandable reaction, should the sexual assault allegations be true. Nevertheless, Ware has at least alleged that he has not been provided requested and needed care for his known medical condition and that denial could be shown as to be a direct result of Dr. McVea's refusal to refer Ware to another physician. On the record as it is, with no answer or responsive pleading from the defendant, the Court must find that Ware has at least alleged sufficient facts to proceed with his claim of retaliation and denial of medical care beyond the Court's frivolousness review.

### D.      Requests for Non-Monetary/Injunctive Relief to which Ware is not Entitled

#### 1.      Criminal Charges and Dismissal as Injunctive Relief

Under a broad reading of the complaint, Ware seeks criminal charges to be brought against the defendants each for their role in the concealment of the sexual assault by Dr. McVea. However, even if the defendants' acts were criminal, Ware fails to allege how this entitles him to this redress under § 1983.

First, it is well settled that private citizens do not have a constitutional right to have an individual criminally prosecuted. *See*, *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *United States v. Batchelder*, 442 U.S. 114, 124 (1979); *Joseph v. Lewis*, 95 F.3d 54, 1996 WL 460071, at *1 (5th Cir. Jul. 30, 1996) (Table, Text in Westlaw); *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990). Furthermore, as discussed above, in order to recover under § 1983, Ware must establish that the acts by the defendants violated his constitutional rights; the fact that he believes the actions to be criminal or against the public interest is not sufficient to establish a constitutional wrong for which he is entitled to personal redress under § 1983. As discussed above, the allegations of

concealment do not rise to a the level of a constitutional violation. Therefore, Ware fails to state a claim that would entitle him to this relief.

Furthermore, Ware seeks to have this court order that the defendants be terminated from their positions at the prison because of their conduct. The federal courts ordinarily accord great deference to the internal administrative decisions of prison officials. *Royal v. Clark*, 447 F.2d 501, 502 (5th Cir. 1971); *Krist v. Smith*, 439 F.2d 146 (5th Cir. 1971); *Haggerty v. Wainwright*, 427 F.2d 1137 (5th Cir. 1970). In fact, the Supreme Court has continuously cautioned federal courts not to assume "a greater role in decisions affecting prison administration." *Shaw v. Murphy*, 532 U.S. 223, 230 (2001); *accord Washington v. Harper*, 494 U.S. 210, 223-24 (1990); *Turner v. Safley*, 482 U.S. 78, 84-85, 89 (1987). The Court finds that it would be against that precedent and the public's interest, if not an abuse of judicial resources, to entertain Ware's request for this relief.

### 2. **Transfer to Another Facility**

As other relief, Ware also seeks a transfer to another prison to get away from the control of the named defendants. He again has failed to establish his entitlement to this relief.

The due process clause does not, by itself, give a prisoner a protected liberty interest in the location of his confinement even if the environment of one prison may be "much more disagreeable" to the prisoner than in another. *See Meachum v. Fanno*, 427 U.S. 215, 225 (1976). Further, a prisoner has no liberty interest in being housed in any particular facility where the state statute vests discretion to the state officials to carry out their official function. *See Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983); *Tighe*, 100 F.3d at 42; *see also Yates v. Stalder*, 217 F.3d 332 (5th Cir. 2000).

In Louisiana, the state has not created a liberty interest for an inmate to be in a particular prison.[5] Ware therefore has no basis to request such relief under § 1983.

## IV.     Recommendation

It is therefore **RECOMMENDED** that Ware's § 1983 claims against the defendants, Warden Tanner, Major Harrell, Josh Goff, and Master Sergeant Touchstone, be **DISMISSED WITH PREJUDICE** as frivolous and otherwise fail to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e) and § 1915A and 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that Ware's § 1983 claims of cruel and unusual punishment under the Eighth Amendment against the defendant, Dr. McVea, be **DISMISSED WITH PREJUDICE** as frivolous and otherwise fail to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e) and § 1915A and 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that Ware's requests for injunctive relief seeking a transfer to another facility, criminal charges to be brought against the defendants, and termination of the defendants from their employment at the prison be **DENIED**.

It is further **RECOMMENDED** that Ware's § 1983 claims seeking monetary relief against Dr. McVea for retaliation and for denial of medical care be allowed to proceed forward and that Dr. McVea be ordered to file an answer or responsive pleading within thirty (30) days of the entry of the District Judge's order addressing the issues raised in this Partial Report.

---

[5]Pursuant to La. Rev. Stat. Ann. § 15:824, the Director of Corrections is authorized to decide which penal institution an inmate should be delivered or transferred.   The Director of Corrections has broad discretion regarding the placement and transfer of state prisoners.  *See Santos v. La. Dept. of Corr. Secretary*, No. 95-4215, 1996 WL 89260, at *4 (E.D. La. Feb. 28, 1996) (Sear, J.) (noting that La. Rev. Stat. Ann. § 15:824(A), (B) does not give DOC prisoners a constitutionally protected right to be housed in a particular facility); *see also* La. Rev. Stat. Ann. § 15:566(B); *State v. Sylvester*, 648 So.2d 31, 33 (La. App. 4th Cir. 1994).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[6]

New Orleans, Louisiana, this day of 20th of September, 2013.

_____
**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**

---

[6]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.